**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**John Andrew SZABO,**
**Defendant–Appellant.**

No. 87–2933.

United States Court of Appeals,
Seventh Circuit.

Argued May 16, 1988.

Decided Aug. 11, 1988.

Thomas Appleton, Springfield, Ill., for defendant-appellant.

John Mehlick, Asst. U.S. Atty. (J. William Roberts, U.S. Atty.) U.S. Atty's Office, Springfield, Ill., for plaintiff-appellee.

Before COFFEY, EASTERBROOK, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

The defendant-appellant, John Szabo, was sentenced to a three-year term of imprisonment after admitting that he violated the terms of his probation for the second time in less than three years. Szabo appeals the sentence, arguing that the sentencing judge abused his discretion by relying on improper factors in imposing the prison term. We affirm.

## I.

John Szabo, a cashier at the Bank of Pawnee, was experiencing financial difficulties and borrowed money from the bank to his legal borrowing limit. Because of his inability to borrow any more money in his own name, he arranged for another person to obtain a loan from the bank and to turn the proceeds of the loan over to him. The bank discovered the illegal transaction and pressed charges. Szabo pleaded guilty in district court to a violation of 18 U.S.C. § 656, misapplication of bank funds, on September 17, 1984. The court found the defendant guilty and sentenced him to three years of probation, fined him $1,000, and ordered him to make restitution in the amount of $2,659.84.[1]

In February 1985, Szabo pleaded guilty and was convicted in the Circuit Court of Sangamon County, Illinois, to a state charge of two counts of writing bad checks. On July 2, 1985, after Szabo's Sangamon County convictions were brought to the attention of federal authorities, the district court revoked Szabo's probation and scheduled a sentencing hearing for July 16, 1985. At that hearing, the court extended Szabo's probation for two more years, increasing his probationary term to five years. The judge imposed three conditions on Szabo's probation, each of which Szabo failed to honor between the July 16, 1985 sentencing hearing and the October 26, 1987 sentencing that Szabo now challenges. (For convenience, we will refer to this period as the "second probationary period.")

Initially, the court required that Szabo report regularly to his probation officer. However, Szabo missed six scheduled meetings and further failed to respond to letters of inquiry and telephone calls regarding his failure to keep scheduled appointments. Second, the court required Szabo to make regular payments on his fine and restitution. For awhile, this condition was not enforced because Szabo was unable to find work. However, Szabo had a full-time job from January 1985 onward, yet he still failed to make three scheduled payments by February 1987. On February 26, 1987, Szabo and his probation officer together agreed that Szabo could afford payments of fifty dollars per month. Szabo failed to meet that payment schedule also, and missed payments in March, April and June 1987. Finally, the court ordered Szabo to participate in a psychotherapy program "at the direction of the Probation Office." Although Szabo's first two probation officers did not enforce this requirement, his third probation officer, on March 20, 1987, directed Szabo to contact the Mental Health Center in Springfield, Illinois for counseling. He failed to do so until October 20, 1987, well after the government had petitioned the court for revocation of his probation.

When Szabo failed to report to the mental health facility by July 27, 1987, the

---

1. Because the record does not reflect the terms of a payment plan, it seems reasonable to assume that the court merely ordered Szabo to pay his fine and restitution immediately. Thereafter, when the defendant failed to pay the fine and restitution, the court apparently approved an installment payment plan. We are unable to determine during what period of time the court ordered monthly payments.

government filed a petition in the district court seeking revocation of his probation. In support of its petition, the government listed Szabo's repeated failure to report to the probation office, his failure to make monthly fine and restitution payments, and his failure to report to the mental health facility for evaluation. On August 17, 1987, Szabo appeared in court and admitted that he had repeatedly failed to honor the conditions of his probation during the second probationary period. The court found that Szabo violated the terms of his probation and referred the matter to the probation office for an updated pre-sentence report and scheduled a sentencing hearing for October 26, 1987. Szabo was released on bail with a special condition that he report to the probation office once a week. Before his sentencing hearing, Szabo failed to report on one occasion.

The court convened the sentencing hearing on October 26, as scheduled. At the hearing, Szabo testified regarding his prior offenses and his failures to meet the conditions of his probation. Szabo also conceded that he had been arrested for driving under the influence of alcohol in August 1986, and further that on two separate occasions he had failed to make court appearances for that offense. Following arguments by Szabo's attorney and the government, the court sentenced Szabo to a prison term of three years for his persistent violations of his federal probation. In explaining the reasons for the sentence, the judge identified the following factors: (1) Szabo perpetrated a fraud on the bank which had given him a position of trust; (2) he was convicted of deceptive practices for writing bad checks while on probation; (3) he failed to report to the mental health center; (4) he failed to report to the probation office "time and time again" and ignored letters sent from the probation office regarding the failures to report; and (5) he was convicted of driving under the influence of alcohol, thus although he missed making monthly payments on his fine and restitution, he had money "to go out and drink booze." The district judge also recommended to the Bureau of Prisons that Szabo be placed in an institution wherein he could obtain mental health counseling.

## II.

On appeal, the sole issue raised by Szabo is whether the district court abused its discretion in sentencing him to three years of imprisonment. Szabo contends that the sentencing judge improperly relied on his failure to seek counseling and his conviction for driving under the influence of alcohol. Szabo argues that these were improper considerations because there was no proof that he had actually purchased any alcohol and eventually he did appear for counseling. He also contends that the sentence is simply too severe. "A sentence which is within the limits established by statute under which it is imposed will not be vacated upon review unless the sentencing judge relied upon improper considerations or unreliable information in exercising his discretion or failed to exercise any discretion at all in imposing the sentence." *United States v. Harris,* 761 F.2d 394, 402–03 (7th Cir.1985). Szabo's three-year sentence falls within the applicable statutory limit of five years for misapplication of bank funds under 18 U.S.C. § 656. Therefore, our review is limited to whether the trial judge based the sentence on improper considerations or failed to exercise any discretion in imposing the sentence. *Harris,* 761 F.2d at 403.

Szabo submits that the district court improperly condemned him for his failure to seek mental health counseling, arguing that he did eventually comply with his probation officer's direction that he be evaluated at the mental health facility. We reject this argument for two reasons. First, on August 17, 1987 Szabo admitted he had failed to timely report for an evaluation at the mental health facility. Moreover, the district court's statement that Szabo "failed to go to the mental health facility for testing" is accurate in that he disregarded his probation officer's order to do so for over seven months and he finally reported to the facility less than a week before his sentencing. While Szabo did report to the mental health facility even-

**254**

tually, he did so only after the government had instituted proceedings to revoke his probation. Thus, the district court did not err in considering Szabo's dereliction in reporting to the mental health clinic, contrary to his probation officer's order.

 Szabo also urges that the district court improperly condemned him for spending money on "booze" rather than paying his fine and restitution. He argues that there was no evidence at sentencing to establish that he purchased any alcohol, even though he was convicted of driving under the influence. In context, however, the district court's remarks refer to Szabo's failure to pay his fine, a violation of his probation. Both Szabo and his probation officer agreed that Szabo could afford to pay $50.00 per month towards his fine and restitution, and he repeatedly neglected to pay this sum. It was not contrary to common sense for the judge to infer that Szabo may have paid for the liquor himself. Moreover, Szabo's counsel conceded at oral argument that Szabo had been convicted of this offense, and therefore had violated an explicit condition of his probation, that he "refrain from violation of any law (federal, state, and local)." While the sentencing judge did not cite the conviction for driving under the influence of alcohol as a probation violation independent of Szabo's failure to make payments, we are not inclined to reverse Szabo's sentence simply because the judge may conceivably have drawn an unfounded inference from conduct that established a violation of the terms of the probation in its own right. Finally, while there was no direct evidence at sentencing to establish that Szabo purchased the alcohol which resulted in his conviction for driving under the influence, we note that the comment in question was gratuitous and was only one small factor among many considered by the court in imposing the sentence. Szabo violated his probation habitually and flagrantly. Because the district court articulated numerous reasons in imposing the sentence, many of which are not challenged on appeal, "we are convinced that the ... judge's sentencing decision was not tainted by any conceivably impermissible considerations." *United*

*States v. Ford,* 840 F.2d 460, 467 n. 4 (7th Cir.1988).

 Finally, Szabo contends that the three-year sentence is excessive because it bears no relationship to the original crime and makes no positive contribution to Szabo's rehabilitation. If a sentence is within the statutory limits and not predicated upon misinformation or constitutionally impermissible considerations, then it is not subject to review on appeal. *United States v. Bramlet,* 820 F.2d 851, 857 (7th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 185, 98 L.Ed.2d 129 (1987). As previously discussed, neither of these conditions occurred in this case, and the judgment of the district court is

AFFIRMED.